Number 8, Imse v. Berryhill May it please the court. My name is Jason Scott Rodman and I represent the appellate Bridget Imse. I will be attempting to preserve three minutes for rebuttal. This is a social security case, a step five case. And this case I would capture as being about first off psychological limitations that are not in the residual functional capacity. Secondly, second about the treatment of the psychological consultative exam. And finally about flawed credibility analysis and internal illogic more generally. And so the first argument is fairly simple. The opinion names depression as not severe. But then throughout the opinion, even the opinion itself, it talks a lot about the different psychological symptoms. But then there are no psychological limitations in the RFC. Moreover, there's actual diagnoses of recurrent major depression and severe depression. I think it's 695 and 896. And these terms carry weight as to the things she's dealing with. And there should have been psychological limitations in the residual functional capacity. But there was not. And as such, it lacks substantial evidence under 405G. Second, and in some ways a less simple but arguably more interesting argument, is the treatment of Wayne Von Bargen, PhD. He's the agency's own hired psychological examiner. And so first off, the rule. Rule goes to the Beardsley line of cases, which is because the Social Security Administration hires their own examiner, when they go discounting that examiner's opinion, it kind of makes the court perk up and await a good reason for discounting the examiner's opinion. But now in application here, it's kind of interesting. Because when you look at Dr. Von Bargen's record, first off, there's the substance of it. And then afterwards, there's what looks like a form that the Social Security Administration had him check off some boxes on. And so when the administrative law judge's opinion talks about it, it says they give it great weight. Because it supported a finding that the client's depression was not severe or disabling. And you kind of scratch your head when you go to look at, well, where does it say that? And apparently, it's interpreting one of those check boxes to say that. But what it's not considering, what's not accounted for in that, is that Von Bargen wants to rule out somatic disorder with predominant pain. That Dr. Von Bargen talks about her activities. And they're very little on a typical day, and they involve some breaks. Don't exactly seem consistent with a non-disabled person. And then Dr. Von Bargen doesn't seem to want to jump through the hoops of that particular form that the ALJ wants to rely on in some sort of strange isolation. And instead, Dr. Von Bargen writes in the conclusion that Ms. Imsie's psychological limitations affect her attendance and productivity. With I think somewhere in there is the note about the possibility of medical factors being an issue as well. But in general, these things should have been, a full reading of Dr. Von Bargen's opinion in record supports that there should have been psychological limitations in the RFC. And it was air to, even just to not properly consider or explain, or provide good reasons for discounting the crux of Von Bargen's opinion. And finally, as to her credibility more generally. And this line of argument focuses on the physical symptoms. So she had a regularly documented, and this is in the briefing, antalgic gait, which means developed so as to avoid pain while walking. It was documented that standing and walking worsened her pain. Sitting for any length of time tended to worsen things for her. The neuropsychologist examined her and concluded that she was often exhibiting additional effort, and a sign that she was trying to overcompensate for her limitations. And then we get to an example of the illogic in the opinion. So the RFC says she can stand or walk two hours per day, which you sort of look at that sideways in light of the evidence about her difficulty standing and walking. But then it also says that she could balance and stoop frequently, which is up to, I think two hours and 40 minutes per day, more than twice as much as standing or walking. But this is a woman who sometimes, I believe, relied on a cane or an assistive device. She has some record of falling with balance issues, and I'm not sure exactly how balance is defined, but if balance is, for example, walking in a small area, it becomes hard to two thirds of the day, and standing or walking just two hours. Also the stooping allotment, when it's up there in the frequent amount, it supports a different level of work, and it would change the job number significantly versus the occasional, which is more plausible under the circumstances. In any case, that's one sort of interesting example of illogic in the opinion. As for credibility more generally, there's the line, it's used at least in there once as if it's supposed to undercut Ms. Imsie's allegations, which is that she's got extreme limitations that she's alleging, and that's just not supported. But the thing is, the RFC, the residual functional capacity, is already of a woman who has a very reduced range of sedentary work, which is as such already an extreme limitation, and for the reasons above, we ask that you remain, and unless you have questions for me, I'd like to reserve my time. Thank you, counsel. May it please the court, I'm Kia Jeffrey, representing the Commissioner of Social Security. Ms. Imsie has essentially argued that the ALJ's RFC finding is not sufficient to address her mental and physical impairments, but aside from making that general assertion, she has not pointed to evidence that would show that additional limitations were necessary in the RFC. Turning first to her argument regarding mental limitations, as she acknowledged, the ALJ found that she did have, the ALJ discussed the fact that she had a diagnosis of depression, and mentioned it several times in his decision. However, the evidence didn't show that depression was severe, or that it caused any functional limitations. Ms. Imsie has relied in part on Dr. Von Bargen's opinion, and argued that somehow that the decision, we see that the ALJ afforded that opinion great weight. Ms. Imsie also referenced the fact that Dr. Von Bargen noted possible issues with attendance and productivity, and she contends that there should be some type of RFC limitation included on that basis. However, when we look at this checkbox form that counsel referenced, the sentence regarding attendance and productivity is really just a simple general statement included in that checkbox form. And what's important to look at, as far as that form is concerned, is that Dr. Von Bargen was asked whether or not Ms. Imsie would have very specific mental functional limitations that would affect her ability to work. And on that checkbox form, he did not note any mental limitations. So really, the ALJ afforded Dr. Von Bargen's opinion great weight, and ultimately arrived at an RFC finding that did not include any mental limitations, which was directly consistent with what Dr. Von Bargen found. Ms. Imsie also referenced Dr. Von Bargen's notation regarding a possible somatic disorder, but the ALJ discussed that specific reference, so we don't have any indication here that the ALJ missed that statement or failed to consider it, because the ALJ actually noted it expressly in his decision. And the ultimate conclusion of Dr. Von Bargen was that Ms. Imsie was capable of performing work without any mental limitations. Turning to Ms. Imsie's second argument regarding her physical limitations, while council referenced consistent issues with an ontologic gait, the record just really does not support that. In 2013 and 2014, Ms. Imsie was demonstrating normal gait and stance. She also had examinations showing false muscle strength and tone. And in fact, in 2015, she attended a consultative examination with Dr. Baucus, who did not detect a muscle spasm. He noted a slightly ontologic gait, but noted that she could perform other postural activities without issue. And what's really notable about Dr. Baucus's opinion is that he found that Ms. Imsie could and is significantly greater than what the ALJ ultimately found that Ms. Imsie could do. So what's really notable here is that no provider found that Ms. Imsie was more limited than what the ALJ found. Ms. Imsie has also contended that the RFC in itself is somehow illogical or inconsistent. Council referenced the limitation to sedentary work, which amounts to two hours total of standing and walking, and then coupled with the limitation to frequent balancing and stooping. There's no inconsistency in those two limitations being put together. I think it's really kind of a misunderstanding of how an RFC works. An RFC is meant to be an assessment of the most that a claimant can do. So all of the limitations in the RFC work together to address the claimant's specific individual limitations. And here we see a thorough decision by the ALJ where he's talking about headaches, abdominal pain, fibromyalgia, back pain, and he's assessing all of those impairments. The objective medical evidence, the medical opinions, and Ms. Imsie's statements about her functioning and determining what her residual functional capacity is. And so none of those limitations that he assesses on an individual basis as far as balancing, stooping, climbing, standing, and walking, none of those limitations are going to conflict with each other because all of them come together to be the most that a claimant can do. And in fact, Ms. Imsie referenced the idea that had the limitation in the RFC been something stating that she could only occasionally balance and stoop, that somehow that would have changed the job numbers in this case. That's directly contradicted by the evidence because the vocational expert testified to Ms. Imsie could perform. And when you look at the description of those jobs, neither of them require any balancing and stooping. So had the ALJ completely precluded Ms. Imsie from balancing and stooping and said that she could never do those activities, there still would have been jobs that she could have performed. Meaning that the ALJ's ultimate conclusion that Ms. Imsie was not disabled would have still held firm. Finally, Ms. Imsie today in argument has asserted some arguments with regards to the ALJ's credibility finding. I just want to note that no arguments regarding credibility were included in the briefing here. And the ALJ's credibility finding is supported by substantial evidence. He discussed her conservative, effective treatment. He discussed the fact that she failed to comply with treatment recommendations as far as attending physical therapy. And he discussed the objective evidence and how it just did not support her allegations of severe pain. So if the court has no further questions for me, I would submit that the ALJ's decision is supported by substantial evidence and should be affirmed. Thank you, counsel. Your Honor, just a few brief thoughts in rebuttal. First off, as to at least the second argument today, I think it's going to come down to a close examination of Dr. Von Bargen's record. And I just looked at it again just now. Maybe due to medical issues is one of the things said there. But I don't know that that's a reason to discount it in terms of knowing exactly what the source of it is based on the etiology rules for the SSA. But I think that's covered in the briefing. More generally, I think that the psych limitations are what takes this case home. And supporting the psych limitations include the neuropsych assessment for attentional abilities that put her in the extremely low range. And again, back to what I discussed in the opening, which is that she's got recurrent major depression, a technical term in Seventh Circuit case law. And more generally, I would address some of the boilerplate regarding depression. She denied depression at this non-psych exam. I'm not sure that that's persuasive under the circumstances because the symptoms wax and wane. And even if there is some credible doubt as to some of those different details, there should have been some psychological limitations, including the RFC. And unless you have any questions for me, I'm going to conclude. No, please. Thank you very much. Thanks again to both counsel on the cases taken under advisement.